UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| FALCON PRODUCTS, INC., et al., | ) | Case No. 05-41108-399 |
| | ) | Jointly Administered Under Chapter 11 |
| Debtor. | ) | |
| | ) | |
| FALCON CREDITOR TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -v- | ) | Adv. No. 07-4016-399 |
| | ) | |
| BLUE CROSS BLUE SHIELD, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT
RIGHTCHOICE MANAGED CARE, INC. d/b/a BLUE CROSS BLUE SHIELD**

The matter before the Court is the Motion for Summary Judgment ("Motion") filed by

Defendant RightCHOICE Managed Care, Inc. d/b/a Blue Cross Blue Shield ("Blue Cross"),

the affidavit, exhibits, and legal memorandum in support of the Motion; the opposition to

the Motion and legal memorandum in opposition to the Motion filed by Plaintiff Falcon

Creditor Trust ("Trust"); and the replies to the Trust's opposition filed by Blue Cross.  The

Court has reviewed the Motion, all pleadings in support of and in opposition to the Motion,

and the case file and hereby FINDS:

**Procedural History and Parties**

1.      On January 31, 2005 ("Petition Date"), Falcon Products, Inc.; Epic Furniture

Group, Inc.; The Falcon Companies International, Inc.; Falcon Holdings, Inc.;

Howe Furniture Corporation; Johnson Industries, Inc.; Madison Furniture

Industries, Inc.; Sellers & Josephson, Inc.; and Shelby Williams Industries, Inc. (collectively "Debtors") filed petitions for relief under Chapter 11 of the Bankruptcy Code, Title 11 of the United States Code.  This Court authorized the joint administration and procedural consolidation of the Debtors' Chapter 11 cases under the Falcon Products, Inc. case caption and number.

2.  On October 18, 2005, this Court confirmed the Debtors' Third Amended Joint Plan of Reorganization ("Plan") pursuant to which the Debtors' cases were substantively consolidated.

3.  Pursuant to the Plan, the Trust was formed for the benefit of the holders of the Debtors' general unsecured claims.  (Plan, pp. 84, 94-96.)  On the Plan's effective date, certain rights and causes of action previously held by the Debtors – including the authority to prosecute avoidance actions under Chapter 5 of the Bankruptcy Code – were "deemed to be assigned to" the Trust.  (Plan, p. 96.)

4.  The Trust initiated this adversary proceeding by filing its Complaint to Avoid and Recover Preferential Transfer.  In the Complaint, the Trust seeks to avoid as preferential under Section 547 of the Bankruptcy Code five pre-petition transfers to Blue Cross in the aggregate amount of $239,916.18 ("Transfers") and to recover such an amount from Blue Cross pursuant to Section 550 of the Bankruptcy Code.  The Trust also seeks the disallowance of any claim Blue Cross has asserted against the Debtors' consolidated bankruptcy estate pursuant to Section 502(d) of the Bankruptcy Code.

**Bases of the Transfers**

5.      The Debtors employed approximately 1,640 employees at various locations. The Debtors offered three separate medical plans to which its employees were assigned.  Thirty employees participated in an HMO plan in California. Thirty-three employees participated in an HMO plan in Saint Louis. Approximately 1,310 employees participated in a self-funded PPO plan ("PPO Plan").

6.      Beginning July 1, 2004, Blue Cross was the third party administrator for the Debtors' PPO Plan.

7.      The Debtors' employees who participated in the PPO Plan utilized the Blue Cross Blue Card network as the plan's in-network health care provider.

8.      Blue Cross provided claims administration for the PPO Plan.  The Debtors' employees who participated in the PPO Plan were able to seek health care from the network of health care providers in the Blue Cross network.  After visiting a network provider, the employee or the health care provider submitted medical bills to Blue Cross for reimbursement.   Blue Cross reviewed and administered the claims in compliance with its agreement with the Debtors.  Blue Cross advised the Debtors on a weekly basis of the claim charges for that week and administered the payment of such claims.  The Debtors paid administrative fees to Blue Cross to cover Blue Cross' costs and expenses in administering the PPO.

9.      The Debtors paid Blue Cross a monthly access fee calculated on a per member per month basis in order to gain access to Blue Cross' network of

3

health care providers and to realize a portion of the discounts that participating providers extended to Blue Cross.

10.    Blue Cross also provided "stop-loss" insurance coverage to the Debtors whereby Blue Cross covered all applicable health care costs in excess of $175,000 per employee.

11.    The Transfers at issue in this adversary proceeding consisted of payments for administrative fees, access fees, and stop loss premium payments owed by the Debtors to Blue Cross for services rendered in October, November, and December of 2004.

### Post-Petition Events

### Debtors' First Day Motions

12.    On the Petition Date, the Debtors filed a series of "First Day Motions." Included in the First Day Motions was the Debtors' Emergency Motion for an Order (I) Authorizing the Debtors to Pay Prepetition Wages, Salaries, and Employee Benefits; (II) Authorizing the Debtors to Continue the Maintenance of Employee Benefit Programs in the Ordinary Course; and (III) Directing All Banks to Honor Prepetition Checks for Payment of Prepetition Employee Obligations Pursuant to 11 U.S.C. §§ 105(a), 507(a)(3), and 507(a)(4) (the "Employee Benefits Motion").  In the Employee Benefits Motion, the Debtors sought authority to pay various pre-petition claims for employee compensation and to continue various employee benefit plans and programs including the Debtors' PPO Plan administered by Blue Cross.  (Employee Benefits Motion, p. 8, ¶ 19, and pp. 18-19, ¶¶ 52-54.)

4

13.     In the Employee Benefits Motion, the Debtors made the following representations to this Court:

A.     As of the Petition Date the Debtors' approximately 1,640 employees included full-time, part-time, and temporary employees. (Employee Benefits Motion, p. 9, ¶ 23.)

B.     The Debtors' employees were categorized into two groups: 440 Sales, General and Administrative Employees and 1,200 Factory Employees. (Id.)

C.     The unpaid wages and salaries of the Debtors' employees as of the Petition Date represented an average per Factory Employee of $510.00 and an average per Sales, General and Administrative Employee of $2,100.00.  (Employee Benefits Motion, p. 12, ¶ 31.)

D.     The Debtors believed that the overwhelming majority of their Employees were each owed significantly less than $4,925.00 in pre-petition wages and salaries. (Id.)

E.     The Debtors believed that their pre-petition wages and salary claims combined with contributions to employee benefit programs would not exceed the dollar limits for priority claims provided under Bankruptcy Code Sections 507(a)(3) and 507(a)(4) of $4,925.00 per employee in the case of the overwhelming majority of employees.  The Debtors further stated that "[s]uch priority claims must, in any event, be paid in full under any plan of reorganization."  (Employee Benefits Motion, p. 24, ¶ 74.)

5

F.   The Debtors again stated that "it is believed that the overwhelming majority of the Debtors' Employees are owed amounts that are under the $4,925.00 cap contained in Sections 507(a)(3) and 507(a)(4)." (Employee Benefits Motion, p. 24, footnote 8.)

14.   The Debtors filed the Affidavit of Neal R. Restivo in support of Chapter 11 Petitions and Emergency First Day Motions ("Restivo Affidavit") to provide a factual basis for the Employee Benefits Motion.

15.   This Court granted the Employee Benefits Motion by order dated February 3, 2005 ("Employee Benefits Order").

**Debtors' Disclosure Statement and Plan**

16.   As stated above, the Debtors' Plan was confirmed on October 18, 2005. The Debtors accomplished the solicitation of votes in favor of the Plan by circulation of the Disclosure Statement to Accompany Debtors' Second Amended Joint Chapter 11 Plan of Reorganization Dated August 29, 2005 ("Disclosure Statement").[1]

17.   In the Disclosure Statement, the Debtors estimated Unsecured Priority Claims in the aggregate amount of $947,198.23. (Disclosure Statement, p. 48, ¶ 1.) The Debtors identified Priority Tax Claims of approximately $243,000. (Disclosure Statement, p. 78.) The Debtors grouped non-tax priority claims into Class 5 Other Priority Claims which included claims with

---

[1] The Debtors' Second Amended Plan was circulated to creditors for voting purposes. At the hearing on confirmation of such plan, the Debtors announced certain changes to the plan which were incorporated into the Debtors' Third Amended Joint Plan of Reorganization which became the confirmed Plan.

6

priority pursuant to Bankruptcy Code Sections 507(a)(3), 507(a)(4), 507(a)(5), and 507(a)(6). (Disclosure Statement, p. 82.) The Debtors represented that they believed "that their actual obligation for Other Priority Claims are [*sic*] not substantial." (Disclosure Statement, p. 83.) Class 5 Other Priority Claims were unimpaired under the Plan and were to be paid in full. (Disclosure Statement, p. 82.)

**Motion for Summary Judgment**

18.    In the Complaint, the Trust seeks to recover the Transfers as preferential transfers made within ninety days before the Petition Date.

19.    After answering the Complaint, Blue Cross filed the Motion, essentially arguing that if the Transfers are set aside and Blue Cross pays the amount of the Transfers, Blue Cross will have a resulting priority claim pursuant to Bankruptcy Code Sections 502(h) and 507(a)(4) in the amount of the Transfers which must be paid in full under the Debtors' Plan.

20.    Blue Cross supported the Motion with the affidavit of Jami Rector, Senior Account Manager of RightCHOICE Managed Care, Inc., d/b/a Blue Cross Blue Shield. Rector testified about the agreement between the Debtors and Blue Cross regarding the administration of the PPO Plan; how the PPO Plan worked; and the disputed Transfers. Rector's statements have been incorporated into the factual findings listed above.

21.    Blue Cross also supported the Motion with references to the Restivo Affidavit and various pleadings filed by the Debtors in connection with the

7

reorganization including the Employee Benefits Motion, the Plan, and the Disclosure Statement.

22.    The Trust opposed the Motion for several reasons, not all of which are consistent.  The Trust argued that any priority claim Blue Cross would have as a result of payment of the preference claim to the Trust would be a claim against the Debtors' bankruptcy estate and not against the Trust which is a separate legal entity established to recover certain avoidance actions for the benefit of unsecured non-priority creditors.  The Trust further argued that any priority claim against the Debtors' estate cannot be offset against a preference liability to the Trust the assets of which are only available to satisfy non-priority unsecured creditors.  The Trust then asserted that the Debtors' bankruptcy estate no longer exists so Blue Cross cannot look to such entity for satisfaction of a priority claim.  The Trust argued that the Plan does not provide for payment to Blue Cross for any resulting claim and that it is too late to amend the Plan to so provide.  The Trust next argued that any resulting claim would be a non-priority unsecured claim.  The Trust then alleged that certain elements of Blue Cross' resulting claim do not qualify for priority treatment.  Finally, the Trust argued that Blue Cross has not proven a priority claim.

23.    The Trust also disputed the factual allegations asserted by Blue Cross in the Motion.  However, the Trust failed to provide any affidavit or other evidence contrary to the factual evidence presented by Blue Cross.  The only additional fact asserted by the Trust is that according to the Restivo affidavit

8

"at least 36 of the covered individuals were former employees covered under COBRA."  (Opposition to Defendant Blue Cross Blue Shield's Motion for Summary Judgment, Docket Number 31, p. 4, ¶ 13, second column.)  What the Restivo Affidavit actually states is as follows:

> The Debtors comply with applicable law mandating the provision of COBRA benefits.  The Debtors do so by offering COBRA benefits through their self-funded PPO Plan.  As of the Petition Date, 36 former Employees pay a total of $12,500 per month to the Debtors for their COBRA benefits.

(Restivo Affidavit, p. 38, ¶ 101.)

24.    No evidence was presented to this Court as to whether the funds which were paid pursuant to the Transfers were on account of former employees receiving COBRA benefits, current employees, or both.

The Court CONCLUDES:

### Jurisdiction and Standing

1.    This Court has jurisdiction over bankruptcy cases and over core proceedings arising under the Bankruptcy Code or arising in a bankruptcy case. 28 U.S.C. § 157(b) and Local Rule 9.01(B) of the United States District Court for the Eastern District of Missouri.

2.    This action to recover an alleged preferential transfer is a core proceeding. 28 U.S.C. § 157(b)(2)(F).

3.    Venue is proper.  28 U.S.C. § 1409(a).

4.    The Trust has standing to prosecute this avoidance action.  Preference avoidance and recovery claims are claims which belong to a debtor's estate. 11 U.S.C. §§ 541(a)(3), 547(b), and 550(a).  A Chapter 11 plan may provide

9

for the retention and enforcement by the debtor, by the trustee, or by **a representative of the estate appointed for such purpose** of any claim or interest belonging to the debtor or to the estate.  11 U.S.C. § 1123(b)(3)(B); *Harstad v. First Am. Bank*, 39 F.3d 898, 902 (8th Cir. 1994).  In the instant case, the Plan provided for the retention and enforcement of this avoidance action by the Trust **as a representative of the estate appointed for such purpose**.  *Id.*

### Summary Judgment

5.    Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c), applicable herein pursuant to Fed. R. Bankr. P. 7056; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Johnson v. Miera (In re Miera)*, 926 F.2d 741, 745 (8th Cir. 1991).  The party seeking summary judgment bears the burden of establishing that whatever is before the trial court demonstrates that the standard for entry of summary judgment has been met.  *Celotex*, 477 U.S. at 323.

6.    Blue Cross has established that no material facts are in dispute.

7.    In order to refute a motion for summary judgment, the non-moving party must go beyond the pleadings and demonstrate by affidavit, depositions, answers to interrogatories, and admissions on file the existence of a genuine issue of material fact for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The Trust has not presented any evidence which establishes a genuine issue of material fact for trial.  Accordingly, summary judgment is appropriate.

10

**Preferential Transfer**

8.      Pursuant to Bankruptcy Code Section 547(b), a transfer of an interest of the debtor in property may be avoided if the transfer was to or for the benefit of a creditor of the debtor; for or on account of an antecedent debt owed by the debtor before such transfer was made; made while the debtor was insolvent; made within ninety days before the date of the bankruptcy petition; that enabled the creditor to receive more than such creditor would receive if the case were a case under Chapter 7 of the Bankruptcy Code, if such transfer had not been made, and if such creditor received payment of such debt under the provisions of the Bankruptcy Code.  11 U.S.C. § 547(b).

9.      Pursuant to Bankruptcy Code Section 550, to the extent a transfer is avoided as preferential under Bankruptcy Code Section 547, the trustee – or in this case the Trust – may recover for the benefit of the estate the property transferred or the value of such property from the recipient of the preferential transfer.  11 U.S.C. § 550(a).

10.     Blue Cross seeks summary judgment on the basis that recovery of the Transfers would be futile.  If the Transfers were avoided and recovered under Bankruptcy Code Sections 547 and 550, Blue Cross would have a priority claim under Bankruptcy Code Sections 502(h) and 507(a)(4) in an amount equal to the Transfers which must be paid in full under the Plan.

**Blue Cross' Resulting Claim if Transfers are Avoided**

11.     Bankruptcy Code Section 502(h) provides that a claim arising from the recovery of property under Section 550 shall be determined and shall be

11

allowed or disallowed the same as if such claim had arisen before the date

of the bankruptcy petition. 11 U.S.C. § 502(h). Therefore, if the Trust

establishes that the Transfers are avoidable as preferential under Bankruptcy

Code Section 547 and recoverable for the benefit of the Debtors' estate

under Section 550, Blue Cross will have a pre-petition claim equal to the

amount of the Transfers ("Resulting Claim"). *Solow v. Greater Orlando

Aviation Auth. (In re Midway Airlines, Inc.)*, 175 B.R. 239, 247 (Bankr. N.D.

Ill. 1994).

### Priority Status of Resulting Claim

12.     The Resulting Claim would be entitled to priority under Section 507(a)(4) as

an allowed unsecured claim for contributions to an employee benefit plan.[2]

13.     Bankruptcy Code Section 507(a)(4) provides a priority for unsecured claims

for contributions to employee benefit plans arising from services rendered

within 180 days before the date of the filing of the bankruptcy petition or the

cessation of the debtor's business, whichever occurs first, but only for each

such plan to the extent of the number of employees covered by such plan

multiplied by $4,925 less the aggregate amount paid to such employees as

---

[2] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") added a new Subsection 507(a)(1) priority for domestic support obligations which resulted in the renumbering of Subsections 507(a)(1) through (6) to new Subsections 507(a)(2) through (7). As a result of the foregoing, the subsection which currently provides priority for contributions to employee benefit plans is Section 507(a)(5). The Debtors' bankruptcy cases were filed before the enactment of BAPCPA. Therefore this adversary proceeding is subject to the pre-BAPCPA Bankruptcy Code. All references to the Bankruptcy Code shall be to the Code as it was in effect on January 31, 2005.

priority wage claims under Section 507(a)(3) plus the aggregate amount paid by the estate on behalf of such employees to other employee benefit plans. 11 U.S.C. § 507(a)(4).

14. Bankruptcy Code Section 507(a)(3) provides a priority for unsecured claims for wages, salaries or commissions including vacation, severance, and sick leave pay earned by an individual within ninety days before the bankruptcy petition date, limited to $4,925 per employee.  11 U.S.C. § 507(a)(3).

15. As a result of Bankruptcy Code Sections 507(a)(3) and 507(a)(4), each employee first is entitled to a priority claim for unpaid wages up to $4,925. Next, claims for contributions to employee benefit plans are entitled to priority but the priority amount is limited to the number of employee plan participants multiplied by $4,925 minus: (i) the aggregate amount of priority wage claims paid to such employees plus (ii) the aggregate amount paid by the bankruptcy estate on account of such employees to other employee benefit plans.

**PPO Plan is an Employee Benefit Plan**

16. The PPO Plan is an employee benefit plan within the ambit of Bankruptcy Code Section 507(a)(4).  *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 126 S. Ct. 2105, 2108 (2006)("It is uncontested here that § 507(a)[(4)] covers fringe benefits that complete a pay package – typically . . . group health . . . insurance – whether unilaterally provided by an employer or the result of collective bargaining."); *Allegheny Int'l , Inc. v. Metropolitan Life Ins. Co.*, 145 B.R. 820, 822-23 (W.D. Penn. 1992); *Official Creditor's Comm. v. Blue*

13

*Cross & Blue Shield of Georgia, Inc. (In re Lummus Indus., Inc.)*, 193 B.R. 615, 618-619 (Bankr. M.D. Ga. 1996); *see also In re HLM Corp.*, 165 B.R. 38, 39 n.2 (Bankr. D. Minn. 1994)(a self-insurance program for reimbursement of employee's medical expenses . . . is the type of traditional fringe benefit voluntarily provided by employers in lieu of direct compensation).

17.     The Debtors affirmatively stated that the PPO Plan was an employee benefit plan qualifying under Bankruptcy Code Section 507(a)(4) in the Employee Benefits Motion and in the Restivo Affidavit which resulted in the entry of the Employee Benefits Order.   Judicial estoppel prevents a party from successfully making representations to the court for one purpose and then disputing the prior representation in later litigation when the opposite representation better suits the outcome sought therein.  *New Hampshire v. Maine*, 532 U.S. 767, 749 (2001); *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1047 (8th Cir. 2006).  The Trust argues that it is a separate entity from the Debtors.  Nonetheless, for purposes of this avoidance action the Trust is the representative of the Debtors' bankruptcy estate under Bankruptcy Code Section 1123(b)(3)(B) and is bound by prior representations made by the Debtors while they were debtors-in-possession.  Therefore, judicial estoppel prohibits the Trust as representative of the Debtors' estate  from arguing that the Resulting Claim would not be entitled to priority status.

18.     Admissions in earlier pleadings are binding and may be used to support summary judgment against the party who made such admissions.  *Missouri*

14

*Housing Dev. Comm'n v. Brice*, 919 F.2d 1306, 1314 (8th Cir. 1990); *Dunham v. City of O'Fallon*, 945 F. Supp. 1256, 1261 (E.D. MO. 1996). The Debtors' admissions with respect to the PPO Plan provide the proper foundation for summary judgment herein and are binding on the Trust as the representative of the Debtors' bankruptcy estate. *Id.*

**Transfers Relate to Services Rendered Within 180 Days Preceding Petition**

19.     All amounts which were paid by the Transfers were for services rendered within 180 days prior to the Petition Date as required by Bankruptcy Code Section 507(a)(4) for priority status.

**Amount of the Transfers Fits Within Statutory Cap**

20.     The Transfers amount to $183.14 per employee covered by the PPO Plan.[3] Therefore, the resulting claim falls well below the cap of $4,925 per employee for priority wage and benefit claims.

21.     Blue Cross has made a prima facie case that the Resulting Claim would be entitled to priority under Bankruptcy Code Section 507(a)(4). Nonetheless, the Trust argues that more is necessary to determine whether the Resulting Claim would be entitled to priority status. Therefore, the Court's analysis continues.

22.     The Debtors have made multiple representations to this Court that total priority claims under Bankruptcy Code Sections 507(a)(3) and (a)(4) do not exceed the statutory cap. (See, e.g. Employee Benefits Motion, p. 12, ¶ 13,

---

[3] This number equals $239,916.18 (the amount of the Transfers) divided by 1310 (the number of employees who participated in the PPO Plan).

p. 24, ¶ 74 and footnote 8.)  The Debtors disclosed average unpaid wages and salaries of $510.00 per Factory Employee and $2,100.000 per Sales, General and Administrative Employee.  (See Employee Benefits Motion, p. 12, ¶ 31.)  The Debtors estimated Unsecured Priority Claims in the aggregate amount of $947,198.23.  (See Disclosure Statement, p. 48, ¶ 1.) If this number were divided by the total number of employees of 1,640, Unsecured Priority Claims would average $577.56 per employee.[4]  If the average amount of unpaid wages and the average amount of all Unsecured Priority Claims are added to the average amount of the Transfers per employee, total priority claims attributable to Factory Employees average $1,270.70[5] per employee and total priority claims attributable to Sales, General and Administrative Employees average $2,860.70[6] per employee. Each of these amounts falls well below the statutory cap of $4,925.00 per employee for priority wage and benefit claims.

23.    Bankruptcy Code Section 507(a)(4) requires calculation of the priority amount of employee benefits in the aggregate and not on a per employee basis.

---

[4] This number includes all Unsecured Priority Claims and therefore by definition overstates claims with priority under Bankruptcy Code Sections 507(a)(3) and (a)(4), the only subsections subject to the monetary cap.

[5] This number was calculated by adding $183.14 (the per employee amount of the Transfers) plus $510.00 (unpaid wages) plus $577.56 (the per employee amount of all Unsecured Priority Claims calculated at $947,198.23 divided by 1,640 total employees).

[6] This number was calculated by adding $183.14 (the per employee amount of the Transfers) plus $2,100.000 (unpaid wages) plus $577.56 (the per employee amount of all Unsecured Priority Claims).

Only 1,310 of the Debtors' 1,640 employees were participants in the PPO Plan and it is unknown how many of those 1,310 employees are Factory Employees and how many are Sales, General and Administrative Employees. Assuming all 440 Sales, General and Administrative Employees participated in the PPO Plan, the aggregate amount paid to them as wage claims would be $924,000 ($2,100.00 wages multiplied by 440 employees).[7] That would leave 870 Factory Employees in the PPO Plan to whom the aggregate amount of wages paid would be $443,700 ($510.00 multiplied by 870 employees). The total wages paid to the employees participating in the PPO Plan would be $1,367,700.

24. The available cap for priority employee benefit claims for the 1,310 employees covered by the PPO Plan would equal $5,084,050. This figure is calculated as $6,451,750 ($4,925 multiplied by 1,310 employees) less $1,367,700 ($924,000 paid to 440 Sales, General and Administrative Employees plus $443,700 paid to 870 Factory Employees). This number does not include other employee benefits which may have been paid pursuant to the Employee Benefits Order. However, it is inconceivable that the Debtors paid employee benefits in excess of $5 million for employees to whom they had a total wage and salary liability of $1.3 million. Furthermore, it is inconsistent with every statement and representation the Debtors have

---

[7] If fewer Sales, General and Administrative Employees participated in the PPO Plan, the total wages paid to employee participants would be lower because Factory Employees have lower wages than Sales, General and Administrative Employees, leaving more availability within the priority cap. Therefore, the calculations used herein are the most favorable to the Trust's position.

made during the course of their reorganization proceeding.  Consequently, this Court is confident that the Resulting Claim of Blue Cross of $239,916.18 if required to repay the Transfers would fit well within the statutory cap and therefore be entitled to priority status.

25.    The Trust disputes the use of generalized calculations to establish that the Blue Cross Resulting Claim would fit within the statutory cap.  This Court will not require a more exact calculation than set forth herein.  In the Employee Benefits Motion the Debtors represented that the amounts due for wages and employee benefits in the aggregate did not exceed the statutory maximum entitled to priority.  The Court did not require the Debtor to calculate the exact amount due to each employee for wages, salaries, commissions, expense reimbursement, and the various employee benefits provided by the Debtors to their employees.  To do so would have been extremely burdensome and in all likelihood would have created administrative costs which would have exceeded any reduction in the amount paid on account of such claims. Instead the Court accepted the Debtors' aggregate numbers coupled with representations that the amounts to be paid would not exceed the cap.  The Court will not give the Debtors the benefit of aggregate calculations while seeking affirmative relief it deems important at one stage of the reorganization and then require an adverse party to produce more exact information at a later stage.  This is especially true where the information relates to the Debtors' employment records which are in its control and possession.  The Court will not require more of Blue Cross – which does not

have access to the Debtors' employment records – than it did of the Debtors, especially not in litigation brought by a representative of the Debtors' estate against Blue Cross.  Furthermore, the Trust has not even made an effort to produce evidence which contradicts the conclusions herein.  Without any affirmative evidence to the contrary, this Court has no choice but to accept the factual representations on the record.

### Trust's COBRA Argument is Without Merit

26.     The Trust also argues that part of the Transfers were attributable to former employees receiving benefits under COBRA and to administrative fees, neither of which, in the Trust's view, are entitled to priority treatment under Bankruptcy Code Section 507(a)(4).  With respect to the COBRA allegation, the Trust has failed to produce any evidence that any portion of the Transfers relate to the former employees who received benefits under COBRA.  Therefore, the COBRA argument is unfounded.

27.     Furthermore, courts are split as to whether retirees should be included in calculating benefit claims entitled to priority under Bankruptcy Code Section 507(a)(4).  Compare *In re Consolidated Freightways, Corp. of Delaware*, 363 B.R. 110 (Bankr. C.D. Cal. 2007)(including retirees in the number of employees covered by the plan) with *Crafts Precision Indus., Inc. v. U.S. Healthcare, Inc. (In re Crafts Precision Indus., Inc.)*, 244 B.R. 178 (B.A.P. 1st Cir. 2000)(excluding retirees from the number of employees covered by the plan).  Nonetheless, the factor is relevant only in calculating the priority cap, not the claim amount.  A claim for contributions to an

employee benefit plan is entitled to priority.  The PPO Plan is such a plan and the Resulting Claim would be a priority claim subject to availability under the cap.

28.   The priority cap is limited to the number of employees covered by the PPO Plan multiplied by $4,925 less the aggregate paid to such employees as priority wages and other benefits.  The only evidence before this Court is that 1,310 employees participated in the PPO Plan and that thirty-six former employees paid a total of $12,500 per month to the Debtors for their COBRA benefits.  It is unclear whether or not the 1,310 figure includes the thirty-six former employees.  However, even if we assume the 1,310 figure includes retirees and thus subtract thirty-six, we are left with 1,274 employees covered by the PPO Plan.  The priority cap would then be calculated by multiplying 1,274 employees times $4,925 per employee ($6,274,450).  The aggregate wages paid to such employees must be deducted from this number.  Assuming the retirees were Factory Employees, 440 Sales, General and Administrative Employees and 834 Factory Employees participated in the PPO Plan.   Priority wage claims paid to 440 Sales, General and Administrative Employees totaled $924,000 (see p. 17, paragraph 23 above) and priority wage claims paid to Factory Employees totaled $425,340 ($510.00 multiplied by 834 employees), for aggregate priority wages claims paid of $1,349,340.  This would still leave $4,925,110 available within the priority cap ($6,274,450 minus $1,349,340) for employee benefit claims.  The Resulting Claim of $239,916.18 would thus clearly fall within the statutory cap

even if the number of employees covered by the plan were calculated to
exclude retirees.  The Trust's COBRA argument is irrelevant.

**All Elements of Resulting Claim Entitled to Priority Status**

29.    With respect to the argument that the administrative portion of the Transfers
is not entitled to priority, this Court disagrees.  Costs necessary to administer
an employee benefit plan are entitled to priority under Bankruptcy Code
Section 507(a)(4).  *Allegheny Int'l , Inc. v. Metropolitan Life Ins. Co.*, 145 B.R.
820, 822-23 (W.D. Penn. 1992); *Official Creditor's Comm. v. Blue Cross &
Blue Shield of Georgia, Inc. (In re Lummus Indus., Inc.)*, 193 B.R. 615, 618-
619 (Bankr. M.D. Ga. 1996).

**Avoidance and Recovery of Transfers Would Produce No Benefit**

30.    If the Transfers were avoided and recovered, Blue Cross would be entitled
to a priority employee benefit claim under Section 502(h).  11 U.S.C.
§§ 502(h) and 507(a)(4); *Fleet National Bank v. Gray (In re Bankvest Capital
Corp.)*, 375 F.3d 51, 68 (1st Cir. 2004); *Adams v. Hartconn Assoc., Inc. (In re
Adams)*, 212 B.R. 703, 714 (Bankr. D. Mass. 1997).

31.    Blue Cross' priority claim would be entitled to payment in full under the Plan.
Therefore, payment by Blue Cross to the Trust as a representative of the
Debtors' estate appointed under the Plan would require a return payment in
the same amount to Blue Cross to satisfy its priority claim.  "The fact that
[Blue Cross] would be entitled to receive exactly what it would be forced to

21

return through avoidance renders avoidance pointless." *Bankvest*, 375 F.3d at 71.[8]

32.     Summary judgment in Blue Cross' favor treats Blue Cross consistently with all other holders of employee benefit claims which were paid in full either pursuant to the Employee Benefits Order or the Plan. Had the Transfers not been made, payments to Blue Cross would not have been current on the Petition Date. Instead the Debtors would have paid such amounts pursuant to the Employee Benefits Order just days after the bankruptcy petition was filed. In that case, the Trust would not be seeking repayment, nor would it have authority to do so. Blue Cross should not be penalized vis-a-vis other providers of employee benefits merely because payments to it were current on the Petition Date.

33.     An assignee stands in the shoes of the assignor and as such can obtain no greater rights than the assignor had at the time of the assignment. *Kroeplin Farms Gen. P'ship v. Heartland Crop Ins., Inc.*, 430 F.3d 906, 911 (8th Cir. 2005). To accept the Trust's position that it should be allowed to avoid and recover the Transfers from Blue Cross yet the Blue Cross Resulting Claim

---

[8] The Trust has sought the disallowance of any claims asserted by Blue Cross against the Debtors' estate pursuant to 11 U.S.C. § 502(d) in the event the Transfers are avoidable and recoverable as preferential under 11 U.S.C. §§ 547 and 550 unless Blue Cross pays the amount of the avoidable and recoverable Transfers. If the avoidance and recovery gave rise to an unsecured claim in favor of Blue Cross it would be unknown at this juncture what if any dividend would be paid to Blue Cross on account of such claim because it is too early to determine the net pool of funds – if any – which will be distributed by the Trust to the holders of unsecured claims. Under such a scenario, it would make sense to require Blue Cross to return the Transfers. Such a course of action does not make sense, however, where Blue Cross' Resulting Claim is entitled to priority status and as such must be paid in full.

should neither be recognized nor factored into the equation would violate this principal. If the Debtors had either prosecuted avoidance actions prior to plan confirmation or retained such actions for post-confirmation prosecution, Blue Cross would be able to offset the Resulting Claim against the preference liability. The Trust should be in no better position vis-a-vis Blue Cross than the Debtors.

### Conclusion

34.    The material facts are not in dispute. The Transfers were for payment of contributions to an employee benefit plan. If the Trust successfully avoided the Transfers as preferential under Bankruptcy Code Section 547 and recovered the amount of the Transfers from Blue Cross under Bankruptcy Code Section 550, and if Blue Cross paid such amount to the Trust, Blue Cross would have a resulting claim under Bankruptcy Code Section 502(h) entitled to priority under Bankruptcy Code Section 507(a)(4). Blue Cross' resulting priority claim would have to be paid in full under the Plan. Therefore, successful prosecution of this adversary proceeding cannot produce any benefit to the Debtors' estate nor to the Trust as the assignee of any net recovery from avoidance actions. Instead, the Trust's prosecution of this litigation will waste judicial resources and impose unnecessary litigation costs on both Blue Cross and the Debtors' unsecured creditors who are the beneficiaries of the Trust and the ultimate recipients of any net recoveries from avoidance actions.

35.     Summary judgment in favor of Blue Cross does no more than avoid the "absurdity of making A pay B when B owes A."  *Citizens Bank v. Strumpf*, 516 U.S. 16, 18 (1995), *quoting Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528 (1913).

36.     Accordingly, summary judgment shall enter in favor of Defendant Blue Cross on all counts.

DATED:  July 20, 2007

St. Louis, Missouri

_____
Barry S. Schermer
Chief United States Bankruptcy Judge

Copies to:

David Michael Brown
Spencer Fane Britt & Browne LLP
1 N Brentwood Blvd, 10th Fl
St. Louis, MO 63105

John J. Hall
Lewis, Rice et al.
500 N. Broadway, Ste. 2000
St. Louis, MO 63102